UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
LOUISE L. WICKENS,
    Debtor.
                                                                                      No. 7-07-13117 SA

SHAHIN SHARAREH and
NM ACCOUNTING SPECIALISTS, INC.
    Plaintiffs,
v.                                                                          Adv. No. 08-1040 S
RICHARD B. WICKENS and
LOUISE L. WICKENS,
    Defendants.

**MEMORANDUM OPINION ON PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment ("Motion")(doc 20) with accompanying Affidavit of Shahin Sharareh (doc 21), Defendants' Response to Plaintiffs' Motion for Summary Judgment (doc 22), Plaintiffs' Reply (doc 23) and Supplemental Affidavit of Shahin Sharareh (doc 24). This adversary proceeding is a complaint to determine dischargeability of a debt under 11 U.S.C. § 523(a)(2) and is a core proceeding under 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, the Court finds that the Motion for Summary Judgment should be denied.

**STANDARD**

Summary judgment is governed by Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party. Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1255-56 (10th Cir. 2001); Wiley v. United States, 20 F.3d 222, 224 (6th Cir. 1994)(citing Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)).

> The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Mitchell v. City of Moore, Oklahoma, 218 F.3d 1190, 1197 (10th Cir. 2000). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein," from which a rational trier of fact could find for the nonmovant. Id.

Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000).

Affidavits, if used, must be based on personal knowledge. Fed.R.Civ.P. 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge.") "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1200 (10th Cir. 2006)(citing United States v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997)) (internal punctuation omitted.) And, therefore, statements of mere belief in an affidavit must be

disregarded.  Id. (citing Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).  Similarly, conclusory and self-serving affidavits are insufficient.  Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

Hearsay evidence cannot be considered on a motion for summary judgment.  Wiley, 20 F.3d at 226.  Any documentary evidence submitted in support of summary judgment must either be properly authenticated or self-authenticating under the Federal Rules of Evidence.  Goguen v. Textron, Inc., 234 F.R.D. 13, 16 (D. Mass. 2006).

**THE COMPLAINT AND ANSWER**

The Defendants admit all the allegations regarding the identities of the parties and the Court's jurisdiction.  Under the complaint's General Allegations, Defendants admit that R. Wickens is or was an officer, director, stockholder, and employee of Real Turf and Putting Greens, Inc. ("Real Turf")(a New Mexico corporation owned either 50 or 100% by Defendants) and that R. Wickens and Real Turf are insiders of each other.  Defendants deny that R. Wickens asked Plaintiffs to loan him money for use in Real Turf, deny that numerous representations of fact were made regarding various assets of R. Wickens or Real Turf, and deny that any loans were made "in reliance upon the representations".  They do admit, however, that Real Turf received loans in the amounts listed on the dates listed,

totaling $475,000.00.  The Defendants deny that R. Wickens is liable on the loans.  Count I claims that the loan amounts, plus interest, are nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Defendants deny every allegation in Count I.  Count II claims that the loan amounts, plus interest, are nondischargeable under 11 U.S.C. § 523(a)(2)(B).  Defendants deny every allegation in Count II.

**THE MOTION FOR SUMMARY JUDGMENT**

The Motion lists 32 material facts Plaintiffs claim are undisputed.  The Motion is supported by the affidavit of Shahin Sharareh, which roughly has one paragraph per proposed undisputed fact.  Among the exhibits attached to the affidavit are: Real Turf's 2005 tax return (Exhibit A), Real Turf's June 30, 2006 balance sheet (Exhibit B), Real Turf's Income Statement for the six months ending June 30, 2006 (Exhibit C), Real Turf's December 31, 2006 balance sheet (Exhibit D), Real Turf's Income Statement for the 12 months ending December 31, 2006 (Exhibit E)(with an additional page of posting information) and a Commitment Report from the Bank of Albuquerque (Exhibit F).

Defendants did not choose to attach counter-affidavits to their response to the Motion.  Rather, they point to deposition excerpts from Shahin Sharareh's deposition to illustrate that there are discrepancies that yield questions of fact.  Specifically, Defendants dispute facts 11, 12, 14, 16, 17, 18,

19, 20, 25 and 32.[1] Each dispute will be discussed. Furthermore, Defendants argue that Plaintiffs have not alleged in their motion all of the necessary elements to support a judgment of dischargeability and that therefore the "undisputed facts" are not present.

FACT 11

Fact 11 states "[i]n addition, not long before Sharareh made Sharareh Loan #1 and NMAS made the NMAS loan, NMAS had prepared, from information provided by R. Wickens, Real Turf's 2005 federal income tax return, a copy of which is attached as Exhibit A to the Sharareh Affidavit." The fact refers to Affidavit ¶ 12, which is identical.

Defendants argue that three deposition excerpts suggest that the information in Real Turf's 2005 tax return came from employees of NMAS and not from Mr. Wickens. They also argue that the entire deposition does not once state that R. Wickens gave false information to Mr. Sharareh. Arguably, Defendants show an issue of fact here. The Court is not to weight credibility at summary judgment, just determine if there is a disputed material fact. The Court finds that there is a question regarding who actually prepared the information from which the books were

---

[1] By not affirmatively controverting the other facts they are deemed undisputed by N.M. L.B.R. 7056-1. See Fed.R.Civ.P. 56(d)(1) ("The facts so specified must be treated as established in the action.")

prepared, and whether Defendants somehow affirmatively adopted this information as accurate.

## FACT 12

Fact 13 states "The 2005 Tax Return contains a balance sheet, which R. Wickens told me was accurate, and contained information supplied by R. Wickens." The fact refers to Affidavit ¶ 13, which is identical.

Defendants have the same argument as for Fact 11. And, the Court finds the same fact question.

## FACT 14

Fact 14 states "[b]efore Sharareh made Sharareh Loans ## 2 and 3, R. Wickens made the same oral and written representations as set forth above, but also made the written representations set forth on the June 30, 2006 balance sheet attached as Exhibit B to the Sharareh Affidavit, and the June 30, 2006 income statement attached as Exhibit C to the Sharareh Affidavit. The fact refers to Affidavit ¶ 15, which is identical.

The Defendants argue that the deposition testimony indicates that Sharareh prepared the June 30, 2006 balance sheet himself, from data that came from the Peach Tree accounting system, which had data input into it by Debbie Newsome, an NMAS employee. Arguably, Defendants show an issue of fact here.

## FACT 16

Case 08-01040-s    Doc 25    Filed 10/14/09    Entered 10/14/09 10:55:39 Page 6 of 12

Fact 16 states "R. Wickens' oral and written representations set forth above were materially false, and R. Wickens knew they were false when he made them. Without limiting the generality of the foregoing, Sharareh learned through discovery in this adversary proceeding that:

    a. Real Turf's accounts receivable were only about $30,700, not $1,128,000;

    b. Real Turf's inventory only had a book value of about $109,000, not $629,000;

    c. Real Turf had contracts in hand worth only about $1,100,000, not $83,000,000;

    d. Total revenue for 2006 was about $2,900,000, almost all of which (about $2,300,000) was collected by June 30, 2006; and

    e. Rather than a net income of $99,839 for the six months ended June 30, 2006, Real Turf had an enormous loss. The fact refers to Affidavit ¶¶ 16-17 and Real Turf's Statement of Financial Affairs. Affidavit ¶ 16 states "[f]urthermore, before making the Loans R. Wickens told me that Real Turf's projected revenue for the last half of 2006 was between $6,000,000 and $8,000,000." Affidavit ¶ 17 is identical to Fact 16.

Defendants argue that it is impossible for Sharareh to have known R. Wicken's state of mind. The Court agrees. Generally, questions of intent, which involve intangible factors including witness credibility, are matters for consideration of the fact

finder after a full trial. Prochaska v. Marcoux, 632 F.2d 848, 851 (10th Cir. 1980), cert. denied, 451 U.S. 984 (1981). See also Tower Oak, Inc. v. Selmonosky (In re Selmonosky), 204 B.R. 820, 828 (Bankr. N.D. Ga. 1996) ("[I]ssues of fraud or intent are not ordinarily amenable to summary disposition due to the importance of the Court's personal observation of witness demeanor during examination in relation to assessing credibility.")

FACT 17

Fact 17 states "[a]ttached as Exhibit D to the Sharareh Affidavit is a balance sheet dated December 31, 2006, obtained through discovery in this adversary proceeding, which is an accurate portrayal of Real Turf's financial situation as of that date." The fact refers to Affidavit ¶ 18, which is substantially identical.

Defendants' have a single argument regarding facts 17 through 20, discussed below.

FACT 18

Fact 18 states "[a]ttached as Exhibit E to the Sharareh Affidavit is an income statement for the twelve months ended December 31, 2006, obtained through discovery in this adversary proceeding, which is an accurate portrayal of Real Turf's income for 2006." The fact refers to Affidavit ¶ 19, which is identical.

Defendants' have a single argument regarding facts 17 through 20, discussed below.

FACT 19

Fact 19 states "[t]he December 31, 2006 Balance Sheet reflects a reduction in the value of Real Turf's assets of more than $1,500,000, and an increase in Real Turf's liabilities of more than $1,400,000, as compared to Real Turf's June 30 Balance Sheet, for a net change in position of more than $2,900,000." The fact refers to Affidavit ¶ 20, which is identical.

Defendants' have a single argument regarding facts 17 through 20, discussed below.

FACT 20

Fact 20 states "[t]he December 31 Balance Sheet reflects a reduction in the value of Real Turf's assets or more than $1,300,000, and an increase in Real Turf's liabilities of more than $2,200,000, as compared to the 2005 Tax Return, for a net change in position of more than $3,500,000." Fact 20 refers to Affidavit ¶ 21, which is identical.

Defendants argue that Sharareh has no foundation for his statements that certain exhibits are "accurate" and some are misrepresentations. Nothing in the deposition explains how he decided that some are accurate and some are not. The Court agrees that this is a possible state of events, so finds that

there is a disputed question of fact regarding facts 17 through 20.

FACT 25

Fact 25 states "[a]ttached as Exhibit F to the Sharareh Affidavit is a loan write-up done by the Bank of Albuquerque in September 2006. The write-up shows (e.g. on page 4 (Background/Industry/Ownership & Management) that Mr. Wickens made the same misrepresentations to the Bank of Albuquerque as he made to Sharareh. (Footnote 1, "The representations were successful; Bank of Albuquerque loaned Real Turf $1,300,000. Because of the possible criminality of the misrepresentations to the bank, R. Wickens refused to answer questions when Plaintiffs deposed him, pleading the protection of the Fifth Amendment to the United States Constitution." The footnote refers to Affidavit ¶ 34, which is identical.) Fact 25 refers to Affidavit ¶ 26, which is identical.

Fact 25 is based on a document which would not be admissible into evidence through Sharareh. It is inadmissible hearsay. He lacks the foundation to testify about it.

FACT 32

Fact 32 states "[a]lthough NMAS and Sharareh did accounting work for Real Turf, Sharareh had no way of verifying whether the figures given to Sharareh for account receivable, inventory, or contracts in hand were accurate, short of conducting a full audit

Page -10-

of Real Turf's books, a task NMAS was never retained to do."
Fact 32 refers tp Affidavit ¶ 32 (sic, should be ¶ 33); ¶ 33 is
identical.

Defendants dispute this fact; claiming that Mr. Sharareh had
many ways of verifying all or any of the bookkeeping data through
his employees, who spent part of their working days at Real Turf.

OTHER QUESTIONS OF FACT

Although not addressed by the parties, the Court finds that
there are other questions of fact that preclude summary judgment.
First, if there were loan documents, why were they not made a
part of the summary judgment motion?  The Court finds that there
is a fact question as to who was the true debtor, Real Turf or
Mr. Wickens.  Was there a guarantee?  Do Plaintiffs seek to hold
Mr. Wickens liable through some sort of accessory liability?
Second, the Court finds no facts relating to the reasonableness
or justification for reliance on any representations made by
Wickens.  For example, does the relationship of the parties,
i.e., financial advisor and client, suggest a higher standard for
reliance under these facts?  Third, did Wickens actually
"publish" the allegedly false financial statements as opposed to
merely having them "prepared" by NMAS?  It is unclear from the
current record.  Finally, there are references in the motion and
response regarding Mr. Wicken's assertion of the Fifth Amendment
privilege.  As a general rule,

> in a civil proceeding, the drawing of a negative
> inference is a permissible, but not an ineluctable,
> concomitant of a party's invocation of the Fifth
> Amendment. See <u>Mulero-Rodríguez v. Ponte, Inc.</u>, 98
> F.3d 670, 678 (1st Cir. 1996). While the law does not
> forbid adverse inferences against civil litigants who
> refuse to testify on Fifth Amendment grounds, see
> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318, 96 S.Ct. 1551,
> 47 L.Ed.2d 810 (1976), it does not mandate such
> inferences. When all is said and done, the trial court
> has discretion over whether a negative inference is an
> appropriate response to the invocation of the Fifth
> Amendment in a particular civil case.

<u>Gannett v. Carp (In re Carp)</u>, 340 F.3d 15, 23 (1st Cir. 2003). However, in ruling on motions for summary judgment, all inferences must be drawn in favor of the non-movant. <u>Selenke</u>, 248 F.3d at 1255-56. Therefore, it is probably incorrect to drawn an adverse inference against one who claims the Fifth Amendment privilege at the summary judgment stage. <u>In re Marrama</u>, 445 F.3d 518, 522 (1st Cir. 2006).

**CONCLUSION**

The Motion for Summary Judgment will be denied. The Court will set a final pre-trial conference, and trial.

                                                  /s/ James S. Starzynski
                                          Honorable James S. Starzynski
                                          United States Bankruptcy Judge

Date Entered on Docket: October 14, 2009

copies to:

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Daniel J Behles
Cuddy & McCarthy, LLP
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109